UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER G.,                                    *

    Plaintiff,                               *

    v.                                      *        Civil Action No. EA-25-2678

FRANK J. BISIGNANO,                             *
  Commissioner of Social Security,
                                                *
    Defendant.                              *

                                                *

MEMORANDUM OPINION

On August 14, 2025, Plaintiff Jennifer G. petitioned this Court to review the final decision of the Social Security Administration (SSA or the Commissioner) denying her claim for benefits.[1]  ECF No. 1.  Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 22, 24–25.  No hearing is necessary.  Local Rule 105.6 (Dec. 1, 2025 D. Md.).  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

I.    BACKGROUND

The instant action is Plaintiff's third appeal in connection with her claim for benefits. Following an overview of the procedural history of this case and the applicable statutory framework is a discussion of the pertinent sections of the administrative record and the operative administrative decision at issue in this appeal.

---

[1]  This case was referred to a United States Magistrate Judge with the parties' consent and reassigned to the undersigned on June 29, 2026.  ECF Nos. 3–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

A.      **Procedural History**

On January 16, 2017, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of September 19, 2016.  ECF No. 17-1 at 74, 85.[2]  Plaintiff asserted that she was disabled within the meaning of the Act because of rheumatoid arthritis, obesity, back pain, and sciatica.  *Id.* at 74, 193.  After the SSA denied Plaintiff's application for benefits, she sought reconsideration, and the Commissioner affirmed its determination on October 31, 2017.  *Id.* at 83, 86, 95–97, 99, 105–106.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on May 28, 2019.  *Id.* at 23, 47–73, 108, 128.  On June 21, 2019, the ALJ rendered a decision (ALJ Decision I) in which he found that Plaintiff was not disabled within the meaning of the Act.  *Id.* at 23–41.  Plaintiff requested further review, which the Appeals Council denied on June 1, 2020.  *Id.* at 8, 159–160, 233–234.  On July 22, 2020, Plaintiff filed suit in this Court seeking review of ALJ Decision I.  *Id.* at 749.  On January 3, 2022, this Court remanded the case to the Commissioner for further proceedings.  *Id.* at 743–749;  *Jennifer G.* v. *Saul*, Civil Action No. GLS-20-2149 (D. Md. Jan. 3, 2022).  On September 22, 2021, while her appeal was pending in this Court, Plaintiff applied for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*.  ECF No. 17-1 at 785–786.  On June 15, 2022, the Appeals Council vacated ALJ Decision I and remanded Plaintiff's case to the same ALJ and directed that he consolidate the applications and render a decision on Plaintiff's eligibility for both Disability Insurance Benefits and Supplemental Security Income benefits.  *Id*.  The ALJ held a hearing and rendered a decision on September 25, 2023, in which he found that Plaintiff was not disabled within the meaning of the Act (ALJ Decision II).  *Id.* at 679–691, 701–731.  Plaintiff again filed

---

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

suit in this Court seeking review of ALJ Decision II, and on August 27, 2024, with the parties' consent, this Court again remanded the case to the Commissioner for further proceedings. ECF No. 17-4 at 132–133; ECF Nos. 16–17 (CDA-24-128). On September 19, 2024, the Appeals Council vacated ALJ Decision II and remanded the case to a different ALJ. ECF No. 17-4 at 159–160. The ALJ held a hearing and rendered a decision on June 13, 2025, in which he denied Plaintiff's claim for Disability Insurance Benefits and granted her claim for Supplemental Security Income (ALJ Decision III). *Id.* at 76–95, 103–131. Specifically, the ALJ found that Plaintiff "was not disabled prior to March 21, 2024, but became disabled on that date and has continued to be disabled through the date of this decision." *Id.* at 93 (bold removed). Plaintiff subsequently filed the instant appeal seeking review of ALJ Decision III. ECF No. 1.

**B.      Statutory Framework**

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)). The Act also authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[3] *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003). Both of these programs define "disability" as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under the SSA, "a plaintiff has the burden of proving disability." *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th Cir. 2021).

---

[3] The primary difference between these two disability benefit programs is the applicant's employment history and financial resources. *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Benefits program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps of the inquiry."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step five, "the burden shifts to the Commissioner to prove, by preponderant evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. §§ 404.1520(e); 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945.  The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Monroe*, 826 F.3d at 180.

### C.        Relevant Prior Decisions and Remand Orders

In Plaintiff's first appeal, this Court identified multiple grounds for remand.  Specifically, this Court found that the ALJ "failed to define the phrase 'no strict production quotas' in his hypothetical" question posed to the vocation expert; "the hypothetical scenarios that the [vocational expert] opined about were for an individual with Plaintiff's impairments who could perform light work, not medium work"; the ALJ's residual functional capacity determination "failed to adequately account for Plaintiff's moderate limitations in concentration, persistence, or pace"; and "substantial evidence d[id] not exist to support the ALJ's step-five finding."  ECF No. 17-1 at 746–747 (emphasis omitted).  The Appeals Council did not provide specific instructions on remand other than to direct the ALJ to consolidate and jointly consider all of Plaintiff's applications for benefits.  *Id.* at 785–786.  The ALJ again determined that Plaintiff was not disabled within the meaning of the Act, Plaintiff appealed, and this Court remanded the case for a second time with the parties' consent.  *See* I.A., *supra*.  In its remand Order, the Appeals Council noted that the ALJ's "decision d[id] not contain an adequate evaluation of the apparent conflicts between the vocational expert evidence and the Dictionary of Occupational Titles" with respect to "bilateral reaching."[4]  ECF No. 17-4 at 159–160.  The Appeals Council directed the ALJ to obtain supplemental evidence from a vocational expert "to clarify the effect of the assessed limitations on the claimant's occupational base"; use hypothetical questions that "reflect the specific capacity/limitations established by the record as a whole"; and "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication."  *Id.* at 160.

---

[4]  The *Dictionary of Occupational Titles* is a Social Security Administration resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations."  *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015) (citations omitted).

**D.    ALJ Decision III**

Before beginning the sequential evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2021. ECF No. 17-4 at 78. At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 19, 2016, the alleged disability onset date. *Id*. At step two, the ALJ found that Plaintiff suffered from the severe impairments of rheumatoid arthritis; obesity; histories of gastric bypass surgery and seizure disorder; mild intermittent asthma; and anxiety, depressive, and bipolar disorders. *Id*. at 78–79. At step three, the ALJ determined that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[5] *Id*. at 80 (bold removed). Before continuing to the step four of the sequential evaluation, the ALJ determined that, "prior to March 21, 2024, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work," except that, as relevant here, "[s]he could perform work without a specific production rate pace, such as an assembly line or hourly production quotas." *Id*. at 82 (bold removed).[6] At step four, the ALJ

---

[5] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020). The listing of impairments found in Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income benefits. 20 C.F.R. § 416.925.

[6] While not relevant to the issues raised in this appeal, the Administrative Law Judge (ALJ) included several other exertional and non-exertional limitations in his pre-March 21, 2024 residual functional capacity determination. ECF No. 17-4 at 82. The ALJ made a separate residual functional capacity determination with respect to Plaintiff's abilities beginning on March 21, 2024. *Id*. at 90–91. This second residual functional capacity determination contained the same production-rate limitation. *Id*. at 90.

determined that Plaintiff was unable to perform any past relevant work since the alleged disability onset date. *Id*. at 91. At step five, the ALJ found that, prior to March 21, 2024, "there were jobs that existed in significant numbers in the national economy that the [P]laintiff could have performed." *Id*. at 91 (bold removed). The ALJ also found that "beginning on March 21, 2024, . . . there are no jobs that exist in significant numbers in the national economy that the [P]laintiff can perform." *Id*. at 92 (bold removed). Ultimately, the ALJ concluded that Plaintiff "was not under a disability within the meaning of the Social Security Act at any time through September 30, 2021, the date last insured," and that her claim for Disability Insurance Benefits was properly denied. *Id.* at 93 (bold removed). The ALJ also concluded that Plaintiff became disabled within the meaning of the Act on March 21, 2024, and was entitled to Supplemental Security Income as of that date. *Id*. The ALJ noted that "[m]edical improvement is expected with appropriate treatment," and recommended a continuing disability review in 18 months. *Id.*

## II.   DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ posed an inadequate hypothetical question to the vocational expert. ECF No. 22 at 10–13. The Commissioner argues the opposite. ECF No. 24 at 7–14. Following discussion of the applicable standard of review, the parties' arguments are addressed below.

### A.   Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt*, 860 Fed. Appx. at 259 (citing 42 U.S.C. § 405(g)).[7] The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id*. Factual findings supported by substantial evidence "shall be

---

[7] After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). "Meaningful review is frustrated—and remand necessary—only where [the Court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.    Vocational Expert Hypothetical Question

Plaintiff argues that the ALJ's hypothetical question was inadequate because it did not define "work without a specific production rate pace." ECF No. 22 at 10–11. Without a definition, Plaintiff contends that "it would have been impossible for the [vocational expert] to assess whether a person with Plaintiff's limitations could maintain the pace proposed." *Id*. at 10. The Commissioner counters that the ALJ provided sufficient descriptors and context to explain

the meaning of the phrase and permit meaningful judicial review.  ECF No. 24 at 10, 14.  The undersigned concurs.

ALJs are afforded "great latitude in posing hypothetical questions . . . so long as there is substantial evidence to support the ultimate question." *Koonce* v. *Apfel*, No. 98-1144, 1999 WL 7864, at *5, 166 F.3d 1209 (Table) (4th Cir. Jan. 11, 1999).  Hypothetical questions need only be "based on substantial evidence and accurately reflect a plaintiff's limitations." *Sarah H.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3358, 2021 WL 4426875, at *1 n.1 (D. Md. Sept. 27, 2001); *see also Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record.").

Here, the ALJ asked the vocational expert to "assume a hypothetical individual of the Claimant's age and education with the past job you described."  ECF No. 17-4 at 122.  The ALJ then proceeded to summarize in the hypothetical question a series of exertional capacity and non-exertional capacity limitations.[8]  *Id.* at 122–123.  The ALJ then continued on to include the following additional nonexertional limitations in the hypothetical question:

> Q. . . . This person can understand, remember, and carry out simple instructions[,] . . . can perform work without a specific production rate pace, such as an assembly line or hourly production quotas[,] . . . make simple work-related decisions[,] . . . deal with occasional changes in a routine work setting [, and] . . . . would not require unscheduled breaks in addition to regularly scheduled breaks. . . [W]ould the hypothetical individual be able to perform the Claimant's past work?
>
> A.  No, Your Honor.

---

[8]  "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

Q.  Would there be other work in the national economy this individual could perform?

A.  Yes, Your Honor.

ECF No. 17-4 at 123–124.

Plaintiff correctly observes that the term "specific production rate" is not defined in the *Dictionary of Occupational Titles*, an SSA resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." ECF No. 22 at 10; *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015).  Case law on this issue is mixed.  Decisions of this Court have held that the phrase "'no strict production quotas' contains terms that are subject to common understanding."  *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021); *accord Brandy K.* v. *Kijakazi*, Civil Action No. CBD-20-3749, 2022 WL 798690, at *6 (D. Md. Mar. 16, 2022); *Shuronn S.*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Maryann H.* v. *Kijakazi*, Civil Action No. TMD-20-2520, 2021 WL 5239852, at *5 (D. Md. Nov. 10, 2021).  Other decisions of this Court have concluded that "a limitation on 'production rate or pace' combined with a prohibition on quotas"—or an explanation, additional descriptor, or example—"provides enough detail for judicial review."  *Melissa J.* v. *Kijakazi*, Civil Action No. BAH-22-1003, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases); *Briana H.* v. *O'Malley*, Civil Action No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (explanation); *Dawn B.* v. *Kijakazi*, Civil Action No. BPG-21-69, 2022 WL 1714918, at *3 (D. Md. Jan. 11, 2022) (additional descriptor); *Jackie W.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (example).  Some decisions of this Court have concluded that phrases like "specific production rate pace," even when coupled with examples ("such as assembly line work or hourly production quotas"), are too ambiguous to permit judicial review.  *Alkein C.* v. *Bisignano*, Civil Action No. TJS-25-1310,

2026 WL 1266164, at *2 (D. Md. May 8, 2026); *Al-Nissa J.* v. *Bisignano*, Civil Action No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026).

Here, the phrase "specific production rate pace" was paired with the examples, *i.e.*, "such as an assembly line or hourly production quotas." ECF No. 17-4 at 123. What is more, as the Commissioner observes, the phrase and companion examples are contextualized by "descriptors related to Plaintiff's ability to perform the mental demands of work activity" (ECF No. 24 at 10), such as the ability to understand, remember, and carry out simple instructions; decision-making ability; adaptation to changes in the routine work setting; and the need for unscheduled breaks (ECF No. 17-4 at 123). As the Fourth Circuit has found, additional context may clarify a production-rate limitation that is otherwise undefined. *Perry* v. *Berryhill*, 765 Fed. Appx. 869, 872 n.1 (4th Cir. 2019) (discussing *Sizemore* v. *Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017)).

The undersigned concludes that the ALJ's hypothetical question in the case at bar "contains terms that are subject to common understanding." *Kenneth L.*, 2021 WL 4198408, at *2 (finding that judicial review was not frustrated because the term "no strict production quotas" "plainly relates to the rigidity of the occupations' production requirements"); *see also Autumn C.* v. *Bisignano*, Civil Action No. EA-25-1592, 2026 WL 2042105, at *3 (D. Md. July 15, 2026) ("Consistent with the body of law arising from decisions of multiple judicial officers of this Court, the undersigned does not find [the 'production rate pace'] limitation too ambiguous to preclude meaningful review.").

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date:  August 7, 2026

                                                    /s/
                                            Erin Aslan
                                            United States Magistrate Judge

11